**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FUNDA TOPCUOGLU,                                        *

        Plaintiff,                                        *          Civil Case No. 1:21-cv-03154-RBW

    v.                                                              *

INDUSTRIAL BANK OF                                   *
WASHINGTON, *et al.*,
                                *

        Defendants.                                      *

   *     *     *     *     *     *     *     *     *     *     *     *

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
INDUSTRIAL BANK OF WASHINGTON'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
<u>AND REQUEST FOR HEARING</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………… iii

I.      SUMMARY OF ARGUMENT ..................................................................................1

II.     PLAINTIFF'S AMENDED COMPLAINT.........................................................................3

III.    STANDARD OF REVIEW……………………………………………………………6

IV.     ARGUMENT………………………………………………………………………...7

        A.  Plaintiff Fails to State a Claim Against Industrial for Violation
            of the FCRA.........................................................................................................7

        B.  Plaintiff's State Law Claims are Preempted by the FCRA...................................12

        C.  To the Extent it is not Preempted, Plaintiff Fails to State a Claim for Violation of
            the CPPA………………………………………………………………...…14

        D.  To the Extent it is not Preempted, Plaintiff Fails to State a Claim for Breach of
            Contract………………………………………………………………...…...16

        E.  To the Extent it is not Preempted, Plaintiff's Defamation Claim is Barred by the
            Applicable One-Year Statute of Limitations…………………………….…….20

        F.  Plaintiff Fails to Plead Sufficient Facts to Support a Claim for Punitive
            Damages………………………………………………………………….……21

        G.  Plaintiff Fails to Plead Sufficient Facts to Support a Claim for Emotional
            Distress………………………………………………………………….…..22

V.      CONCLUSION………………………………………………………………….24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acosta v. The Islamic Republic of Iran*, 574 F. Supp. 2d 15 (D. D.C. 2008)……………..........21

*Adams v. Martinsville Dupont Credit Union,* 573 F. Supp. 2d 103 (D. D.C. 2008)………..12, 13

*Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250 (D. D.C. 2004)……………………………..16

*Armstrong v. Navient Solutions, LLC*, 292 F. Supp. 3d 464 (D. D.C. 2018)……………………13

*Ascroft v. Iqbal,* 556 U.S. 662 (2009*)…………………………………………………………..*6, 7, 18

*Awah v. Capital One Bank, N.A.*, No. CV DKC 14-1288, 2016 WL 930975
   (D. Md. Mar. 11, 2016)……………………………………………………………………………5

*Bailey v. Bank of Am.*, No. 1:06-CV-3906-CAM, 2007 WL 9710225 (N.D. Ga. July 19, 2007)..5

*Becker v. Early Warning Servs.*, LLC, No. CV 19-5700, 2020 WL 2219142
   (E.D. Pa. May 7, 2020……………………………………………………………………………5

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)……………………………...6, 7, 11, 15, 18

*Boone v. Wells Fargo Bank, N.A,* No. CIV 07-3922 (DWF)/AJB, 2009 WL 2086502
   (D. Minn. July 13, 2009…………………………………………………………………………… 5

*Cadmus v. Checkr, Inc.*, No. 19-3459, 2021 WL 5411327 (D. D.C. Sept. 14, 2021)...................13

*Carswell v. Air Line Pilots Ass'n, Int'l.*, 540 F. Supp. 2d 107 (D. D.C. 2008)………………….11

*Caulfield v. Stark*, 893 A.2d 970 (D.C. 2006)……………………………………………….15, 21

*Cauman v. George Washington Univ.,* 630 A.2d 1104 (D.C. 1993) ............................................ 23

*Dalo v. Kivitz*, 596 A.2d 35 (D.C. 1991 ) .………………………………………………………21

*Davenport v. Sallie Mae, Inc.*, 124 F.Supp. 3d 574, *aff'd,* 623 F, App'x 94 (4th Cir. 2015) ....... ..10

*Doe v. De Amigos*, LLC, 987 F. Supp. 2d 12 (D. D.C. 2013………………………………........21

*Elmore v. North Fork Bancorporation, Inc.*, 325 F. Supp. 2d 336 (S.D.N.Y. 2004) ……......10, 11

*E.M. v. Shady Grove Reprod. Sci. Ctr. P.C.*, 496 F. Supp. 3d 338 (D. D.C. 2020)……………...18

*Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008)...................................................................... 21

*Floyd v. Bank of America Corp.*, 70 A.3d 246 (D.C. 2013)…………………………………...17, 18

*Foretich v. Glamour,* 741 F. Supp. 247 (D. D.C. 1990) ............................................................... 23

*Fowler v. A & A Co.*, 262 A.2d 344 (D.C. 1970) ....................................................................... 19

*Guido v. Advanced Infusion, Inc.*, No. L-10-423, 2010 WL 11691938(D. Md. Sept. 15, 2010)15

*Hadley v. Baxendale Assocs.*, 9 Exch. 341 (1854)…………………………………………..... 19

*Hasvold v. First USA Bank, N.A.,* 194 F. Supp. 2d 1228 (D. Wyo. 2002) ................................. 12

*Hayduk v. Lanna*, 775 F.2d 441 (1ˢᵗ Cir. 1985) …………………………………………………16

*HealthOne of Denver, Inc. v. UnitedHealth Grp., Inc.*, 805 F. Supp. 2d 1115
    (D. Colo. 2011) …………………………………………………………………………………17

*Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423 (S.D.N.Y. 2006) ....................... 15

*Himmelstein v. Comcast of the District, L.L.C.*, 931 F. Supp. 2d 48 (D. D.C. 2013)........... 12, 13

*Homan v. Goyal*, 711 A.2d 812 (D.C. 1998). ............................................................................. 23

*Howard Univ. v. Baten,* 632 A.2d 389 (D.C. 1993) ....................................................….20

*Howard Univ. v. Best*, 484 A.2d 958 (D.C. 1984)……………………………………….......23

*Ihebereme v. Capital One, N.A.*, 933 F. Supp.2d 86 (D. D.C. 2013).......................................... 13

*In re A.B.*, 955 A.2d 161 (D.C. 2008) ……………………………………………………….15

*In re Ferrero Litig.*, 794 F. Supp. 2d 1107 (S.D. Cal. 2011) …………………………………16

*In re Marsh & Mclennan Companies, Inc. Sec. Litig.*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006)...15

*Jacobs v. Vrobel*, 724 F.3d 2171 (D.C. Cir. 2013) ...................................................................... 7

*Jaramillo v. Experian Info. Solutions, Inc.,* 155 F. Supp. 2d 356 (E.D. Pa. 2001).................... 12

*Jefferson v. Collins,* 905 F. Supp. 2d 269 (D. D.C. 2012) ...................................................... 16,17

*Jin v. Ministry of State Sec.*, 254 F. Supp. 2d 61 (D. D.C. 2003) ............................................... 20

*Kaempe v. Myers,* 367 F. 3d 958 (D.C. Cir. 2004).....………………………………………… 6

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9ᵗʰ Cir. 2009) ……………………………………16

*Kee v. Zimmer, Inc.*, 871 F. Supp. 2d 405 (E.D. Pa. 2012) ……………………………………..17

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994)………………………………16

*Mazza v. Verizon Washington DC, Inc.*, 852 F. Supp. 2d 28 (D. D.C. 2012). ................ 8, 10, 11

*McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77 (D. D.C. 2016)............................................ 14

*Mercer Mgmt. Consulting v. Wilde,* 920 F. Supp. 219, 238 (D.D.C. 1996) ............................ 19

*Mero v. City Segway Tours of Washington DC, LLC*, 826 F. Supp. 2d 100 (D .D.C. 2011).17, 18

*Mouzon v. Radiancy, Inc.,* 85 F. Supp. 3d 361 (D. D.C. 2015…………………………………16

*Nahigan v. Juno Loudoun, LLC,* 684 F. Supp. 2d 731 (E.D. Va. 2010) …………………………17

*Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057 (9th Cir. 2002) ........................ 11

*Nkpado v. Standard Fire Ins. Co.*, 697 F. Supp. 2d 94 (D .D.C. 2010)...................................... 19

*Ogden v. Ass'n of the United States Army*, 177 F. Supp. 498 (D. D.C. 1959)........................... 20

*Okocha v. Trans Union LLC,* No. 08-CV-3107, 2011 WL 2837594 (E.D.N.Y. Mar. 31, 2011),
    *aff'd,* 488 F. App'x 535 (2d Cir. 2012) …………………………………………………………5

*Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158 (D.C. 2013). ................................................. 22, 23

*Papasan v. Allain*, 478 U.S. 265 (1986) ...................................................................................... 6

*Pearson v. Chung*, 961 A.2d 1067 (D.C. 2008) ………………………………………………..15

*Pfeffer v. Ernst*, 82 A.2d 763 (D.C. 1951) ................................................................................ 20

*Pirelli Armstrong Tire Corp. Retiree Med. Benefit Trust v. Walgreen Co.*, 639 F. 3d 436
    (7th Cir. 2011)………………………………………………………………………………16

*Pleznac v. Equity Residential Mgmt., L.L.C.*, 320 F. Supp. 3d 99 (D. D.C. 2018).................... 13

*Rasor v. Retail Credit Co.*, 554 P.2d 1041 (Wash. 1976) ………………………………………5

*Rivera v. JPMorgan Chase Bank, N.A.*, 140 F. Supp. 3d 88 (D. D.C. 2015) ............................ 13

*Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142 (4th Cir. 2008) .................... 21

*Sears, Roebuck & Co. v. Goudie*, 290 A.2d 826 (D.C.1972) ...................................................... 19

*Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769 (4th Cir. 2013). ..........................16, 17

*Stanley v. Huntington Nat'l Bank,* No. 1:11-CV54, 2012 WL 254135 (N.D. W. Va. Jan. 27, 2012, *aff'd*, 492 Fed. App'x 456 (4th Cir. 2012)...............................................................17

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) ...............................21

*Sundberg v. TTR Realty, LLC*, 109 A.3d 1123 (D.C. 2015) ...................................... 14

*Sundown, Inc. v. Canal Square Assocs.*, 390 A.2d 421 (D.C. 1978)......................................... 19

*Thomas v. News World Communications,* 681 F. Supp. 55 (D. D.C. 1988)........................ 23, 24

*Thompson v. Jasas Corp.*, 212 F. Supp. 2d 21 (D. D.C. 2002) .................................................. 20

*Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006) ........................................................ 6

*Tsintolas Realty Co. v. Mendez*, 984 A.2d 181 (D.C. 2009)..................................................... 18

*United States ex rel. Joseph v. Cannon,* 642 F.2d 1373 (D. C. Cir. 1981)..........................16

*United States ex rel. Williams v. Martin-Baker Aircraft Co.,* 389 F.3d 1251 (D.C. Cir. 2004)..16

*Vantage Commodities Fin. Servs. I, LLC v. Assured Risk Transfer PCC, LLC,* 321 F. Supp. 3d 49 (D. D.C. 2018). ........................................................................... 15

*Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097 (9th Cir. 2003) ....................................16

*Want v. Bulldog Fed. Credit Union*, No. CV ELH-19-2827, 2020 WL 3639990 (D. Md. July 6, 2020) ..............................................................................................................5

*White v. Equifax Info. Servs. LLC*, No. 5:19-CV-427 (MTT), 2021 WL 232597 (M.D. Ga. Jan. 22, 2021) ..............................................................................................................5

*Whiting v. AARP*, 701 F. Supp. 2d 21 (D. D.C. 2010) ..............................................18

*Wiggins v. Equifax Servs., Inc.*, 848 F. Supp. 213 (D. D.C. 1993) ...................................5

*Williams v. Baker,* 572 A.2d 1062 (D.C. 1990)........................................................ 23

*Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455 (D. D.C. 1997)....................................... 16

*Woodner v. Breeden*, 665 A.2d 929 (D.C. 1995)....................................................... 21

**Statutes**

15 U.S.C. § 1681, *et. seq*...............................................................................1,3

15 U.S.C. § 1681 (a)(d)(1) .............................................................................4

15 U.S.C. § 1681 (a)(f) ...................................................................................4

15 U.S. C. § 1681 (a (r)(4) .............................................................................5

15 U.S.C. § 1681h ..................................................................................13, 21

15 U.S.C. § 1681h(e) .....................................................................................13

15 U.S.C. § 1681n ...........................................................................................8

15 U.S.C. § 1681o ...........................................................................................8

15 U.S.C. § 1681 s-2 ................................................................................4, 12

15 U.S.C. § 1681s-2(a) ..................................................................................10

15 U.S.C. § 1681s-2(a)(1) .............................................................................11

15 U.S.C. § 1681s-2(a)(1)(A) ..........................................................................8

15 U.S.C. § 1681 s-2 (a)(8)(E) ........................................................................8

15 U.S.C. § 1681s-2(b) ................................................................................8, 9

15 U.S.C. § 1681s-2 (b)(1) ..........................................................................9, 10

15 U.S.C. § 1681s-2 (b)(2) ............................................................................10

15 U.S.C. § 1681s-2(c) (1) ..............................................................................8

15 U.S.C. § 1681t(b)..............................................................................…..... 12

15 U.S.C. § 1681t (b)(1)(F) ...........................................................................12

15 U.S.C. 1693 (a) (2) .....................................................................................5

D. C. Code § 12-301(4)…................................................................................20

D.C. Code § 28-3814, *et. seq*…....................................................................13

D.C. Code § 28-3901, *et. seq.* …………………………………………………………..3, 13

D.C. Code § 28-3904 …………………………………………………………………..14, 15

**Rules and Regulations**

Fed. R. App. P. 32.1 …………………………………………………………………...5

Fed. R. Civ. P. 9 …………………………………………………………………………8

Fed R. Civ. P. 9 (b) ………………………………………………………..2, 15, 16, 17

Fed. R. Civ. P. 12 (b)(6) ………………………………………………………………1

Local Civ. R. 7 …………………………………………………………………………...1

12 C.F.R. § 1005.2 (b) (1) ……………………………………………………………..5

**Other Authorities**

Restatement (Second) of Torts § 46 cmt. d ……………………………………………23

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
INDUSTRIAL BANK OF WASHINGTON'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
AND REQUEST FOR HEARING**

Defendant Industrial Bank of Washington ("Industrial")[1], by its undersigned counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Civil Rule 7, files this Memorandum of Points and Authorities in support of its Motion to Dismiss all claims filed against it by Plaintiff Funda Topcuoglu ("Plaintiff") in her Amended Complaint.

## I. SUMMARY OF ARGUMENT

Plaintiff's Amended Complaint fares no better that her initial filing. For the reasons set forth herein, the Court should dismiss all claims asserted against Industrial in the Amended Complaint with prejudice.

This case arises from Plaintiff's ***admitted overdraft*** of her bank account with Industrial; Industrial's reporting of that overdraft event to co-defendant Equifax Information Services, LLC ("Equifax"); and Equifax's failure to correct its reporting months later when Plaintiff finally brought her account current. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Industrial has moved to dismiss all claims filed against it for the following reasons:

***First***, Plaintiff 's Amended Complaint fails to state a claim for a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA"), because, while Plaintiff nominally titles her claim as one for an alleged failure to investigate, she alleges no facts to support such a contention. Rather, Plaintiff's entire claim is premised upon an allegation that Industrial incorrectly reported issues with her checking account to Equifax, and there is no private right of action under the FCRA for Industrial's alleged incorrect or improper reporting.

---

[1] Because there are two named defendants, Industrial Bank of Washington is referred to herein as "Industrial" so as to avoid confusion with co-defendant Equifax Information Services, LLC.

*Second*, Plaintiff's state law claims for an alleged violation of the District of Columbia's Consumer Protection Procedures Act, as well as her claims for defamation and breach of contract, are preempted by the FCRA because they arise from the same set of operative facts as the FCRA claim, involve the same subject matter as the FCRA claim, and Plaintiff has not suffered any independent damages flowing from her state law claims other than those damages she attributes to Industrial's alleged FCRA violation.

*Third,* to the extent Plaintiff's Consumer Protection Procedures Act claim is not preempted, that claim fails as a matter of law because Plaintiff failed to plead any specifics of an alleged misrepresentation by Industrial as required by Federal Rule of Civil Procedure 9(b) and the applicable case law, or a plausible claim for misrepresentation by omission.

*Fourth,* to the extent Plaintiff's breach of contract claim is not preempted, the claim fails as a matter of law because Plaintiff does not allege facts sufficient to establish that Industrial breached any contract with her, and because Plaintiff concedes that she did not suffer any damages from the purported breach other than those arising from Industrial's alleged FCRA violation – which damages are remote, speculative, and not clearly within the reasonable contemplation of the parties at the time any alleged "contract" was entered.

*Fifth,* to the extent Plaintiff's defamation claim is not preempted, the action fails as a matter of law because it is barred by the applicable one-year statute of limitations, and because  Plaintiff concedes that she did not suffer any damages other than those arising from Industrial's alleged FCRA violation.

*Sixth,* as a matter of law, Plaintiff fails to adequately plead facts that could give rise to an award of punitive damages.

2

***Seventh***, as a matter of law, Plaintiff fails to adequately plead facts that could give rise to an award of emotional distress damages.

## II. PLAINTIFF'S AMENDED COMPLAINT

Plaintiff filed suit against Industrial and Equifax based upon Industrial's alleged "***erroneous reporting*** of Plaintiff's bank account as a charged off revolving credit account and [Equifax]'s failure to follow reasonable procedures and ***to conduct a reasonable investigation*** in reporting that account for more than a year." *See* ECF No. 15 ("Amended Complaint") at ¶ 1 (emphasis added).[2] Plaintiff now asserts the following claims:

- Count I - "Violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*" against Industrial;

- Count II - "Violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*" against Equifax;

- Count III - "Violation of the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq.*" against Industrial;

- Count IV – "Breach of Contract" against Industrial; and

- Count V – "Defamation" against both Industrial and Equifax.

In support of her claims, Plaintiff alleges that she opened a personal checking account with Industrial in February of 2014 and that she overdrew that account in February of 2020. *See* Amended Complaint at ¶¶ 12-13. Plaintiff claims that she became aware of her overdraft in March

---

[2] Plaintiff initiated this action on or about December 2, 2021. *See* ECF No. 1. On or about February 2, 2022, and after Industrial had filed its original Motion to Dismiss (ECF No. 13), Plaintiff filed an Amended Complaint (ECF No. 15). In her Amended Complaint Plaintiff deleted her claim against Industrial for an alleged violation of the District of Columbia's Fair Debt Collection Act ("FDCA"), D.C. Code § 28-3814, *et. seq.* (formerly Count III of Plaintiff's initial Complaint). *See* ECF Nos. 1 and 15. By operation of law, Plaintiff's FDCA claim is now voluntarily dismissed. Nevertheless, in error, Plaintiff mentions the FDCA in paragraph 1 of the Amended Complaint. To avoid any confusion, the Court should clarify the dismissal of Plaintiff's FDCA claim.

of 2020, but suggests that she was unable to cure her default because Industrial's bank branches were allegedly closed for in-person banking due to the COVID-19 pandemic. *Id*. at ¶¶ 14-15. Plaintiff contends that at some point she contacted Industrial "to cure the overdraft," but claims to have been told that she could only do so in person. *Id*. Plaintiff does not identify the date on which this conversation supposedly took place, nor the person with whom she allegedly spoke. Plaintiff contends that Industrial "classified the Account as 'charged off'" and in July of 2020 reported this event to the three (3) major credit reporting agencies (*i.e.*, Equifax, TransUnion, and Experian). *Id*. at ¶ 19.

Plaintiff asserts that in June of 2020, Industrial opened its branches for "in-person drive through access," and that at that time she brought her account current. *Id*. at ¶¶ 17-18. She alleges that Industrial reported the overdraft to the three major credit reporting agencies in or around July 2020, after she had corrected the overdraft, as a closed "revolving account, though it included no credit or overdraft protection component." *Id*. at ¶¶ 19, 23, 25. She suggests that bank overdrafts typically do not appear on credit reports, and that reporting of bank overdrafts is "limited to 'specialty consumer reporting agencies[.]'" *Id*. at ¶¶ 20-22.[3]

---

[3] Although not germane to the relief sought in this Motion because Plaintiff has no right to bring a private cause of action against Industrial for alleged inaccurate reporting as will be described *infra*, Plaintiff is plainly wrong in her assertions regarding the information that is properly reportable by a furnisher to a CRA. The Court can take judicial notice of the articles cited by Plaintiff in her Amended Complaint and the statutes referenced in support thereof, ***none of which stand for the proposition(s) for which they are cited by Plaintiff***. To be clear, none of the statutes and regulations (nor the *ad hominem* web material) included in the Amended Complaint preclude a furnisher from reporting an overdraft event to a CRA.

A review of applicable law reveals the broad discretion afforded under the FCRA as to what information a financial institution such as Industrial can report to a CRA. *See*, *e.g.*, 15 U.S.C. § 1681a(d)(1) (defining a "consumer report" as "any written, oral, or other communication of ***any information*** by a consumer reporting agency ***bearing on a consumer's*** credit worthiness, credit standing, credit capacity, ***character, general reputation, personal characteristics, or mode of living***") (emphasis added); 15 U.S.C. § 1681a(f) (defining a "consumer reporting agency" as "any person which . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information ***or other information on consumers***") (emphasis added); and 15 U.S.C. § 1681s-2 (referring to "***any information relating to a consumer***" or similar language throughout the statute governing furnishers of information) (emphasis added).

Plaintiff claims to have discovered the alleged erroneous reporting on August 5, 2020. *Id*.

at ¶ 27. In response, Plaintiff asserts that she reached out to Industrial to address the alleged error

that same day and filed online disputes with all three major credit reporting agencies. *Id*. at ¶¶ 27-

29.  On August 15, 2020, Plaintiff received a letter from Industrial wherein Industrial informed

her that Industrial had "instructed the three major credit reporting agencies to delete any negative

reporting pertaining to the checking account which was reported in error." *Id*. at Exhibit A and at

¶ 30. Industrial further advised Plaintiff in its August 15, 2020 letter that "all errors are expected

---

Indeed, this Court and other courts have reviewed reports of items other than credit accounts in the context of the FCRA. *See, e.g.*, *Wiggins v. Equifax Sers., Inc.*, 848 F. Supp. 213, 216-17 (D. D.C. 1993) (examining under the FCRA a criminal records check performed by Equifax at request of consumer's employer), and *Rasor v. Retail Credit Co.*, 554 P.2d 1041, 1044 (Wash. 1976) (report prepared by Equifax's predecessor containing information that consumer "had a reputation of living with more than one man out of wedlock" and about her drinking habits was consumer report within scope of FCRA).

Further, information such as is at issue in this action is frequently reported to CRAs. *See, e.g.*, *White v. Equifax Info. Servs. LLC*, No. 5:19-CV-427 (MTT), 2021 WL 232597, at *1 (M.D. Ga. Jan. 22, 2021) (report to Equifax of monthly payment of $114.00 due on a closed account); *Boone v. Wells Fargo Bank, N.A.*, No. CIV 07-3922 (DWF/AJB), 2009 WL 2086502, at *1, *7 (D. Minn. July 13, 2009) (report of checking account overdrafts to CRA); *Awah v. Capital One Bank, N.A.*, No. CV DKC 14-1288, 2016 WL 930975, at *1-*2 (D. Md. Mar. 11, 2016) (report to three credit bureaus of charged off line of credit linked with checking account and outstanding balance); *Want v. Bulldog Fed. Credit Union*, No. CV ELH-19-2827, 2020 WL 3639990, at *1-2 (D. Md. July 6, 2020) (report to CRAs including Experian regarding overdraft on checking account and account closure); *Okocha v. Trans Union LLC*, No. 08-CV-3107, 2011 WL 2837594, at *1 (E.D.N.Y. Mar. 31, 2011), *aff'd*, 488 F. App'x 535 (2d Cir. 2012) (report to three major CRAs including Equifax regarding overdraft on checking account); and *Bailey v. Bank of Am.*, No. 1:06-CV-3096-CAM, 2007 WL 9710225, at *1 (N.D. Ga. July 19, 2007) (report to CRAs regarding overdraft on checking account and account closure).

Lest there be any misunderstanding on this point, in *Becker v. Early Warning Servs., LLC.*, No. CV 19-5700, 2020 WL 2219142 (E.D. Pa. May 7, 2020), the District Court specifically noted that:

> ***The FCRA's definition of the term "account" includes deposit accounts***. Section 1681a(r)(4) defines "account" for purposes of the FCRA as the same as the definition under the Electronic Funds Transfer Act ("EFTA"). The EFTA defines "account" as "a demand deposit, savings deposit, or other asset account . . . established primarily for personal, family, or household purposes[.]" 15 U.S.C. § 1693a(2) (2011); see also 12 C.F.R. § 1005.2(b)(1) (2019) ("'Account' means a demand deposit (checking), savings, or other consumer asset account (other than an occasional or incidental credit balance in a credit plan) held directly or indirectly by a financial institution and established primarily for personal, family, or household purposes.").

*Id*. at *9 (emphasis added).

Industrial recognizes that some of the cases cited above involve *pro se* litigants and are unpublished. Industrial cites these cases pursuant to Federal Rule of Appellate Procedure 32.1 as they demonstrate the type of information that is permissibly reportable to CRAs and the fallacy of Plaintiff's position on this point.

to be resolved before or by the 20th of August 2020" and that the Plaintiff should contact Industrial "[i]f you have any questions regarding your credit report being updated." *Id*. at Exhibit A.

In response to Industrial's corrective action, both TransUnion and Experian deleted their negative reporting, but Equifax failed to do so. *Id*. at ¶ 31. Plaintiff alleges she sent additional disputes to Equifax, but that Equifax did not delete its negative reporting until after the involvement of her counsel in August of 2021.[4] *Id*. at ¶¶ 32-34, 39-41, 43. Plaintiff further alleges that Equifax, "[u]pon information and belief," sent notices of these disputes to Industrial and that Plaintiff also sent additional correspondence to Industrial during this time. *Id*. at ¶¶ 35, 37-38, 40.

As a result of the alleged negative reporting, Plaintiff claims to have been barred from participating in a program to purchase and flip distressed housing in Baltimore City, denied a low interest car loan, lost rental income, and suffered "significant emotional distress." *Id*. at ¶¶ 44-59.

## III. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the plaintiff's allegations, the court need not accept as true "legal conclusion[s] couched as a factual allegation[s]". *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)). Nor should the court accept "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint," or by other documents properly considered in connection with the motion to dismiss. *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) (citations omitted). For this reason, a pleading that offers mere "labels and conclusions" or a "formulaic recitation of the elements of a

---

[4] To the extent this allegation is correct and this case proceeds, Plaintiff's counsel will be a material fact witness.

cause of action" will not suffice; nor will "naked assertions devoid of further factual enhancement." *Ashcroft*, 556 U.S. at 678. (quoting *Twombly*, 550 U.S. at 557) (internal punctuation omitted); *Jacobs v. Vrobel*, 724 F.3d 217, 221 (D.C. Cir. 2013) (the court need not accept plaintiff's legal conclusions couched as factual allegations). Thus, in order for a plaintiff to state a plausible claim, the factual allegations supporting each cause of action "must be enough to raise a right to relief above the speculative level" (*Twombly*, 550 U.S. at 555), and detailed enough to permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Federal Rules of Civil Procedure further require a plaintiff to plead certain matters with particularity, including allegations of fraudulent conduct, misrepresentation or mistake, as well as the specifics of the time, the place and the identity of speaker when material to the plaintiff's claim. As the Supreme Court explained in *Twombly*, "[o]n certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than [Federal Rule of Civil Procedure] 8 requires." 550 U.S. at 569 (citing Federal Rule of Civil Procedure 9).

## IV. ARGUMENT

### A.   Plaintiff Fails to State a Claim Against Industrial for Violation of the FCRA

Plaintiff fails to state a claim against Industrial under the FCRA because the FCRA does not provide Plaintiff with a private right of action for Industrial's alleged inaccurate reporting regarding her checking account, and Plaintiff alleges no facts to support any other FCRA violation against Industrial. 15 U.S.C. § 1681s-2(a).

Subsection (a) of the FCRA details the duty to report or "provide accurate information," and states that a furnisher of information "shall not furnish any information relating to a consumer to any [credit reporting agency] if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A); *Mazza v. Verizon Washington DC, Inc.*, 852 F. Supp. 2d 28, 34 (D. D.C. 2012). Under certain circumstances, the FCRA imposes civil liability on any person who willfully or negligently fails to comply with any of the FCRA's requirements. *See* 15 U.S.C. § 1681n (creating civil liability for willful noncompliance with any portion of the FCRA) and 15 U.S.C. § 1681o (creating civil liability for negligent noncompliance with any portion of the FCRA). However, the FCRA "expressly excludes Section 1681s-2(a) from the purview of Sections 1681n and 1681o, instead limiting enforcement of Subsection (a) exclusively to the federal and state agencies and officials identified in Section 1681s." *See Mazza*, 852 F. Supp. 2d at 34. Thus, section 1681s-2(a) does not provide for a private right of action, that is, enforcement by an individual. *Id*.

Instead, a furnisher of credit information such as Industrial is only exposed to civil liability for violations of 15 U.S.C. § 1681s-2(b) ("subsection (b)"), which pertains to the furnisher's obligation to conduct a reasonable investigation ***after*** being notified of a consumer's dispute by the credit reporting agency – not the consumer.[5] To pursue such a claim, Plaintiff must allege facts that establish that Industrial failed to conduct a reasonable investigation of Plaintiff's dispute after being notified of the dispute by Equifax. Here, Plaintiff does not allege any facts to support a subsection (b) claim premised upon Industrial's willful and/or negligent failure to conduct a reasonable investigation. In fact, Plaintiff alleges facts that demonstrate just the opposite. *See*

---

[5] Responsibilities of a furnisher of information after direct notice of a dispute from a consumer are contained in subsection (a) of this statute, for which there is no private right of action. *See* 15 U.S.C. § 1681s-2(a)(8)(E) and 15 U.S.C. § 1681s-2(c)(1). To the extent Plaintiff's claim is based on such direct disputes, *see* Amended Complaint at ¶ 64, it must be dismissed.

Amended Complaint at ¶¶ 30-31 ("On or about August 15, 2020, Industrial sent Plaintiff a letter apologizing for the erroneous reporting and indicating that it had requested that all of the CRAs delete the tradeline . . . In response to Plaintiff's disputes and Industrial's request, TransUnion and Experian deleted the Industrial tradeline, but Equifax refused to do so…").

Nevertheless, in Count I of her Amended Complaint, Plaintiff proclaims in a self-serving, conclusory manner that Industrial "willfully, or in the alternative negligently, violated 15 U.S.C. § 1681s-2(b)." However, Plaintiff alleges no facts to support her claim that Industrial violated subsection (b). Rather, Plaintiff immediately qualifies her FCRA claim by stating: "Specifically, the tradeline indicated an inaccurate account type and delinquency amount . . ." *Id*. at ¶ 62. Thus, regardless of what label Plaintiff places on her claim, the factual allegations of the Amended Complaint fall squarely within subsection (a). This includes Plaintiff's allegation that Industrial could not and/or should not have reported her account at all – which assertion is plainly wrong as discussed in footnote 3 *supra*, and nevertheless also falls squarely within subsection (a)'s purview on reporting and not subsection (b)'s investigation requirements.

As discussed, the FCRA provides only a limited private right of action, and Plaintiff's claim expressly exceeds that limited scope. The FCRA section cited by Plaintiff, 15 U.S.C. § 1681s-2(b) is entitled "Duties of furnishers of information upon notice of dispute," requires a furnisher of information to a CRA to do the following:

    (A)    conduct an investigation with respect to the disputed information;

    (B)    review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

    (C)    report the results of the investigation to the consumer reporting agency;

    (D)    if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the

person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E)    if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

    (i)    modify that item of information;

    (ii)    delete that item of information; or

    (iii)    permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1). Those requirements, along with a deadline in which to perform as stated in subsection (b)(2), are the entirety of subsection (b). To state a claim for such a violation, Plaintiff must show: "(1) that [Plaintiff] notified the CRAs of the disputed information; (2) that the CRAs notified [the furnisher] of the dispute; and (3) that [the furnisher] then failed to investigate and modify the inaccurate information." *Davenport v. Sallie Mae, Inc.*, 124 F. Supp. 3d 574, 581 (D. Md.), *aff'd*, 623 F. App'x 94 (4th Cir. 2015) (citation omitted). Plaintiff's Amended Complaint does none of this.

There is no provision in subsection (b) that imposes liability on a reporting party for furnishing inaccurate information, which is the gravamen of Plaintiff's claim against Industrial. Rather, as discussed above, Industrial's reporting obligations are expressly covered under 15 U.S.C. § 1681s-2(a), and subsection (a) does not provide for a private right of action. Indeed, as this Court has unequivocally held, actions to enforce the reporting/furnishing provisions of the FCRA can only be brought "by an appropriate federal or state authority." *Mazza*, 852 F. Supp. 2d at 34 (subsection (a) "does not provide for a private right of action, that is, enforcement by an individual" and enforcement of subsection (a) is limited "exclusively to the federal and state agencies and officials identified in Section 1681s") (citations omitted); *see also Elmore v. North*

*Fork Bancorporation, Inc.*, 325 F. Supp. 2d 336, 338-39 (S.D.N.Y. 2004); *and see Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002) (holding that "private enforcement [of subsection (a)] under §§ 1681n & o is excluded").

Here, Plaintiff's claim, although nominally a subsection (b) claim, is instead an attempt to shoehorn factual allegations that are properly within the scope of subsection (a) into this lawsuit. As this Court instructed in *Mazza, supra,* Plaintiff is expressly prohibited from doing so because she is not a governmental authority. *Mazza*, 852 F. Supp. 2d at 34. Plaintiff quite literally gives away the game in the very first paragraph of her Amended Complaint when she ***accuses Industrial of "erroneous reporting"*** and ***Equifax, but not Industrial***, of a "failure to follow reasonable procedures and to conduct a reasonable investigation." *Id*. at ¶ 1 (emphasis added). Plaintiff then supports her FCRA claim by specifying that her FCRA claim is based on her allegation that Industrial's report "indicated an ***inaccurate account type and delinquency amount*** and should not have appeared at all." *Id*. at ¶ 62 (emphasis added). These are the exact type of claims covered exclusively by subsection (a). *See* 15 U.S.C. 1681s-2(a)(1) (prohibiting reporting information "if the person knows or has reasonable cause to believe that the information is ***inaccurate***" and "if (i) the person has been notified by the consumer . . . that specific information is ***inaccurate***; and (ii) the information is, in fact, ***inaccurate***") (emphasis added).

Plaintiff also fails to support her "subsection (b)" claim beyond bare allegations of a "fail[ure] to submit reinvestigation results to Equifax" that parrots the language of the statute without any specificity. *See* Amended Complaint at ¶ 63. This is legally insufficient. *See*, *e.g.*, *Carswell v. Air Line Pilots Ass'n, Int'l*, 540 F. Supp. 2d 107, 114 (D. D.C. 2008) (requiring "sufficiently detailed" factual allegations "'to raise a right to relief above the speculative level'"). (quoting *Twombly*, 550 U.S. at 555). It is also wholly belied by Plaintiff immediately identifying

the claim as being "*specifically*" about the allegedly incorrect reporting. *See* Amended Complaint at ¶ 62 (emphasis added). None of Plaintiff's other factual allegations or claims charge Industrial with a failure to investigate, instead focusing solely on the allegedly incorrect reporting. *See*, *e.g.*, *id*. at ¶ 82 (alleging that Industrial is liable by "fail[ing] to inform Plaintiff that it would be reporting the Account to the CRAs"); and ¶ 100-01, 103-04 (alleging that Industrial is liable for defamation by sharing false information with the CRAs). For these reasons, Count I of the Amended Complaint should be dismissed in its entirety

## B. Plaintiff's State Law Claims are Preempted by the FCRA.

In *Himmelstein v. Comcast of the District, L.L.C.*, 931 F. Supp. 2d 48 (D. D.C. 2013), this Court adopted the "total preemption" approach to the FCRA, and held that the FCRA preempts all related state-law causes of actions against furnishers of credit information such as Industrial – even willful violations of state common law and statutory provisions. *Id*. at 59 (citing *Jaramillo v. Experian Info. Solutions, Inc.,* 155 F. Supp. 2d 356, 362 (E.D. Pa. 2001)) (holding that the new preemption provision "clearly eliminated all state causes of action against furnishers of information, not just ones that stem from statutes that relate specifically to credit reporting"); *Hasvold v. First USA Bank, N.A.,* 194 F. Supp. 2d 1228, 1234 (D. Wyo. 2002) (same); *Adams v. Martinsville Dupont Credit Union,* 573 F. Supp. 2d 103, 118 (D. D.C. 2008) (holding that defamation claim against furnisher was preempted by the FCRA even though complaint alleged "malice and/or willful intent to injure"); *see also* 15 U.S.C. § 1681t(b) ("No requirement or prohibition may be imposed under the laws of any State (1) with respect to any subject matter regulated under . . . (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies[.]").[6]

---

[6] There are two exceptions identified in 15 U.S.C. 1681t(b)(1)(F) that are not relevant here, as they deal with specific state laws from Massachusetts and California only.

In the wake of *Himmelstein,* this Court has consistently followed the "total preemption" approach and rejected efforts to creatively plead around the FCRA's preemptive cloak. In doing so, this Court has not hesitated to summarily dispose of the identical state law claims that Plaintiff attempts to bring in this case, including claims for defamation[7], breach of contract, and an alleged statutory violation of the Consumer Protection Procedures Act ("CPPA"). *See*, *e.g.*, *Ihebereme v. Capital One, N.A.*, 933 F. Supp. 2d 86, 98 (D. D.C. 2013) (FCRA preempts claims filed under the CPPA and for defamation); *Armstrong v. Navient Solutions, LLC*, 292 F. Supp. 3d 464 (D. D.C. 2018) (holding that FCRA preempts both common law and statutory claims, including consumers' CPPA claim); *Cadmus v. Checkr, Inc.*, No. 19-3459, 2021 WL 5411327 at *5-*6 (D. D.C. Sept. 14, 2021) (defamation counts are preempted); *Pleznac v. Equity Residential Mgmt., L.L.C.*, 320 F. Supp. 3d 99, 107 (D. D.C. 2018) (preempting defamation claim when all of the "allegedly defamatory statements were reports of credit-related information"); *Rivera v. JPMorgan Chase Bank, N.A.*, 140 F. Supp. 3d 88, 93-94 (D. D.C. 2015) (defamation count preempted); *Adams v. Martinsville Dupont Credit Union*, 573 F. Supp. 2d 103, 118 (D. D.C. 2008) (defamation count preempted).

Based on this precedent, each of Plaintiff's state common law and state statutory claims is preempted by the FCRA and must be dismissed. This includes: (i) Count III, an asserted violation of the CPPA, D.C. Code § 28-3901, *et seq.*, *see* Amended Complaint at ¶ 82 (claiming that Industrial is liable by "fail[ing] to inform Plaintiff that it would be reporting the Account to the

---

[7] Defamation counts are also subject to a separate preemption provision in the FCRA, which states that "no consumer may bring any action or proceeding in the nature of defamation . . . with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . . based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). For a discussion of the interplay between the two FCRA preemption provisions, see this Court's opinion in *Himmelstein v. Comcast of the District, L.L.C.*, 931 F. Supp. 2d 48 (D. D.C. 2013). As applied to this action, both preemption provisions apply: the § 1681t provision applies as discussed *supra*, and the § 1681h provision applies to the defamation claim because, as described *infra* at § IV(F), Plaintiff has failed to plead "malice or willful intent to injure" by Defendant.

CRAs"); (ii) Count IV, breach of contract, *see* Amended Complaint at ¶ 94 (confirming that Plaintiff's breach of contract damages are the same damages allegedly flowing from her FCRA claim: "[a]s a result of Industrial's breaches, Plaintiff suffered damages as set forth above, for which Industrial is liable to Plaintiff"); and (iii) Count V, defamation, *see* Amended Complaint at ¶¶ 96, 98-100, 103 (identifying the alleged defamatory statements as the reports about Plaintiff's bank accounts and as being published to the CRAs).

### C.    To the Extent it is not Preempted, Plaintiff Fails to State a Claim for Violation of the CPPA

Through Count III of the Amended Complaint, Plaintiff seeks to recover from Industrial for alleged violations of the CPPA. In support of this claim, Plaintiff alleges that Industrial: (i) "misrepresented to Plaintiff that it would accept all valid funds transfers and deposits to the Account, not only in person cash deposits[,]" or alternatively that Industrial "misrepresented to Plaintiff that she could only bring the Account current with an in person cash deposit" and (ii) "failed to inform Plaintiff that it would be reporting the Account to the CRAs." *See* Amended Complaint at ¶¶ 79-82. Notwithstanding the fact that this claim is preempted by the FRCA, Plaintiff's CPPA count fails as a matter of law because Industrial made no actionable misrepresentations to Plaintiff and because Plaintiff fails to plead any alleged misrepresentation with the particularity required by the Federal Rules of Civil Procedure and an "injury in fact" arising from the alleged misrepresentations.

The CPPA is limited to policing unlawful trade practices arising out of a consumer-merchant relationship. *See Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1129 (D.C. 2015) (internal citation omitted); *McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 91 (D. D.C. 2016) ("[T]he CPPA does not cover all consumer transactions. . ."). Thus, under the CPPA a "merchant" can only be held liable if, in the context of a "consumer" transaction, the merchant "engage[s] in

an unfair or deceptive trade practice" as defined in the statute. This includes "misrepresent[ing] as to a material fact which has a tendency to mislead[;]" "[r]epresent[ing] that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law[;]" and "fail[ing] to state a material fact if such failure tends to mislead[.]" D.C. Code § 28-3904. To prevail on her claim, Plaintiff must present clear and convincing evidence of a CPPA violation. *Pearson v. Chung*, 961 A.2d 1067, 1074 (D.C. 2008) (citing *Caulfield v. Stark*, 893 A.2d 970, 976 (D.C. 2006)). "Clear and convincing evidence is defined as the 'evidentiary standard that lies somewhere between a preponderance of evidence and evidence probative beyond a reasonable doubt.'" *Pearson*, 961 A.2d at 1076 n. 10 (quoting *In re A.B.*, 955 A.2d 161, 166 (D.C. 2008)). Here, Plaintiff does not even allege that any representation made by Industrial **to Plaintiff** was false.

As discussed in Section III of this Memorandum, *supra*, Plaintiffs' CPPA claim should also be dismissed because Plaintiff fails to satisfy the heightened pleading requirements for a claim based upon an alleged misrepresentation, as mandated by Federal Rule of Civil Procedure 9(b). *See Twombly*, 550 U.S. at 569; *In re Marsh & Mclennan Companies, Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 495 (S.D.N.Y. 2006); *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 454 (S.D.N.Y. 2006); and *Guido v. Advanced Infusion, Inc.*, No. L-10-423, 2010 WL 11691938, at *2 (D. Md. Sept. 15, 2010) (citation omitted). This pleading standard "requires a statement of the 'time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud, as well as the individuals involved.'" *Vantage Commodities Fin. Servs. I, LLC v. Assured Risk Transfer PCC, LLC*, 321 F. Supp. 3d 49, 65 (D. D.C. 2018).

Under Federal Rule of Civil Procedure 9(b), the facts and circumstances must "be stated

with particularity." The purpose of this rule is to "'discourage[] the initiation of suits brought solely for their nuisance value'" and "'guarantee all defendants sufficient information to allow for preparation of a response.'" *United States ex rel. Williams v. Martin-Baker Aircraft Co. Ltd.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (quoting *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)). Thus, claims that sound in fraud must state with particularity "the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994) (internal quotation marks omitted); *see also Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 253 (D. D.C. 2004) (plaintiff must plead "who, what, when, where, and how").

Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements apply not just to claims for common law fraud, but also to consumer protection claims, including claims asserted under the CPPA, because they "are akin to allegations of fraud." *Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455, 464 (D. D.C. 1997) (internal quotation marks omitted). Indeed, as this Court explained in *Mouzon v. Radiancy, Inc.,* 85 F. Supp. 3d 361 (D. D.C. 2015):

> [T]he Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule. *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir.1985)) (emphasis in original). ***Other federal courts have determined that claims pursuant to the consumer protection laws of*** California, **the District of Columbia**, Illinois, Maryland, Virginia, Colorado, West Virginia, and Pennsylvania require pleading with particularity when they are based on fraud. *See Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1126 (9th Cir. 2009) (***even though fraud is not a necessary element*** California Legal Remedies Act and the California Unfair Competition Law, ***claims involving nondisclosure or affirmative misrepresentation are claims of fraud and require pleading with particularity***); *In re Ferrero Litig.,* 794 F. Supp.2d 1107, 1114 (S.D. Cal.2011) (Rule 9(b) applicable to claims of violations of the California False Advertising Law grounded in fraud); *Jefferson v. Collins,* 905 F. Supp. 2d 269, 289 (D.D.C.2012) (***fraud-based claims under the D.C. Consumer Protections Procedures Act require pleading with particularity***); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 441 (7th Cir. 2011) (allegations of fraud under the Illinois Consumer Fraud Act trigger heightened pleading standard of Rule 9(b)); *Spaulding v. Wells Fargo Bank, N.A.,* 714 F.3d 769,

781 (4th Cir. 2013) (Maryland Consumer Protection Act claims sounding in fraud require pleading with particularity); *Nahigian v. Juno Loudoun, LLC,* 684 F. Supp.2d 731,741 (E.D. VA. 2010) (Rule 9(b)'s particularity requirements apply to Virginia Consumer Protection Act sounding in Fraud); *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.,* 805 F. Supp.2d 1115, 1120–21 (D. Colo. 2011) (pleading with particularity pursuant to Rule 9(b) is required for deceptive or unfair trade practice claim under the Colorado Consumer Protection Act); *Stanley v. Huntington Nat. Bank,* No. 1:11CV54, 2012 WL 254135, at *7 (N.D.W.Va. Jan. 27, 2012) *aff'd,* 492 Fed.Appx. 456 (4th Cir.2012) (pleading with particularity pursuant to Rule 9(b) is required for the West Virginia Consumer Protection Act claim); *Kee v. Zimmer, Inc.,* 871 F. Supp.2d 405,412 (E.D. Pa.2012) (claims pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law require pleading with particularity). Each of the claims in this action pursuant to the consumer protection acts of these states is based on fraud and includes allegations of affirmative misrepresentation. *See, e.g.,* Compl. ¶¶ 199, 213, 224, 225 (affirmative misrepresentations basis of California claims). ***Therefore, Rule 9(b) applies to each of these claims, and pleading with particularity is required.***

*Id.* at 378-79 (emphasis added); *see also Jefferson v. Collins,* 905 F. Supp. 2d 269, 289 (D. D.C. 2012).

Plaintiff's CPPA claim clearly does not meet the Federal Rule of Civil Procedure 9(b) pleading standard. Instead, she offers only recitations from the statute, and baldly asserts facts without identifying the time, place, content, and speaker as required. *See* Amended Complaint at ¶ 76-84. As this Court has held, "the mere repetition of [the] legal provisions [of the CPPA] does nothing to state a claim." *Mero v. City Segway Tours of Washington DC, LLC*, 826 F. Supp. 2d 100, 107 (D. D.C. 2011) (citation omitted). For these reasons, Plaintiff's CPPA claim must be dismissed.

Plaintiff's contention that Industrial violated the CPPA by allegedly failing to inform her when she opened her checking account in 2014 that it would report her future overdraft event to Equifax in 2020 does not state a plausible claim as a matter of law. *See  Floyd v. Bank of America Corp.*, 70 A.3d 246 (D.C. 2013) (upholding dismissal of plaintiff's CPPA claim and holding that the defendant bank's failure to disclose that its customer service phone number connected with

overseas representative and the legal ramification of that overseas connection did not state a plausible claim for violation of the CPPA.). As the Court in *Floyd* explained:

> [T]he inapplicability of U.S. legal protections to overseas transmittals of Bank-customer account information is a ***legal assessment*** of the implications of the Bank's use of overseas call centers, not a *fact. Cf. Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (cautioning against courts' acceptance of "'a legal conclusion couched as a factual allegation'" for the purpose of evaluating whether a complaint fails to state a claim) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

*Id.* at 255-56 (emphasis in original) (footnotes omitted). Plaintiff's claim concerning the failure to inform her of an alleged scale back of banking operations in response to the Covid-19 Pandemic is neither pleaded with particularity nor is it plausible. *Mero v. City Segway Tours of Washington DC, LLC*, 826 F. Supp. 2d 100, 107 (D. D.C. 2011) (quoting *Whiting v. AARP*, 701 F. Supp. 2d 21, 29 (D. D.C. 2010)) ( "'A claim . . . under the CPPA is properly considered in terms of how the practice would be viewed and understood by a ***reasonable consumer***.'") (emphasis added); *E.M. v. Shady Grove Reprod. Sci. Ctr. P.C.*, 496 F. Supp. 3d 338, 412 (D. D.C. 2020) (identifying that a reasonable consumer would not have understood an entity to be making "any sort of open-ended guarantees" regarding future performance of an agreement "without leaving open the possibility that complications would arise" and especially so upon "new and surprising information").

### D.      To the Extent it is not Preempted, Plaintiff Fails to State a Claim for Breach of Contract

To the extent Plaintiff's breach of contract claim is not preempted by the FCRA, the claim nevertheless fails as a matter of law. To prevail on a breach of contract claim, the Plaintiff must plead facts that show: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).

Recognizing the preclusive effect of the FCRA, the Plaintiff attempts to manufacture a

18

breach of contract claim by asserting that Industrial breached its contract with her by: i) closing its branches to in-person banking as result of the Covid-19 pandemic and allegedly advising her that it would only accept in-person deposits; and ii) by failing to notify her that it was closing her admittedly overdrawn account. *See* Amended Complaint at ¶¶ 91-92. Notwithstanding the fact that Plaintiff fails to allege any facts to support her bald assertion that Industrial contracted as alleged, all of Plaintiff's claimed damages flow from Industrial's alleged inaccurate reporting, not from any alleged breach of a contract with Plaintiff.

As a matter of law, Plaintiff's claimed damages are also far too remote and speculative to have been within the reasonable contemplation of the parties at the time Plaintiff opened her personal checking account with Industrial back in 2014. On this point, the District of Columbia recognizes the damages rule established in *Hadley v. Baxendale Assocs.*, 9 Exch. 341 (1854), which provides:

> When two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i.e.,* according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it.

*Fowler v. A & A Co.*, 262 A.2d 344, 349 (D.C. 1970); *accord Sundown, Inc. v. Canal Square Assocs.*, 390 A.2d 421, 432-33 (D.C. 1978); *Sears, Roebuck & Co. v. Goudie*, 290 A.2d 826, 832 (D.C. 1972); *Nkpado v. Standard Fire Ins. Co.*, 697 F. Supp. 2d 94, 98-99 (D.D.C. 2010) ("damages which are normally recoverable in actions for breach of contract are those which arise directly from the breach itself, or could reasonably have been in contemplation of both parties when they made the contract") (alteration in original) (quoting *Mercer Mgmt. Consulting v. Wilde,* 920 F. Supp. 219, 238 (D. D.C. 1996)).

Lastly, to the extent Plaintiff seeks to recover for emotional distress and mental anguish as a consequence of Industrial's alleged breach of contract, such damages are not recoverable in the District of Columbia. As the Court in *Pfeffer v. Ernst*, 82 A.2d 763 (D.C. 1951) explained:

> [D]amages for mental anguish suffered by reason of the breach [of a contract] are not recoverable. Some type of mental anguish, anxiety, or distress is apt to result from the breach of any contract which causes pecuniary loss. Yet damages therefor are deemed to be too remote to have been in the contemplation of the parties at the time the contract was entered into to be considered as an element of compensatory damages. This rule of law seems to be well-established.

*Id.* at 764; *see also Howard Univ. v. Baten,* 632 A.2d 389, 392 (D.C. 1993). For these reasons Plaintiff's breach of contract claim must be dismissed in its entirety.

### E.     To the Extent it is not Preempted, Plaintiff's Defamation Claim is Barred by the Applicable One-Year Statute of Limitations

Through Count V of the Amended Complaint, Plaintiff claims that Industrial defamed her by allegedly reporting inaccurate credit information to Equifax beginning in "July 2020." *See* Amended Complaint at ¶ 19. Notwithstanding the fact that Plaintiff's defamation claim is preempted by the FCRA and involves reporting activity for which there is no private cause of action, the claim is also barred by the applicable one-year statute of limitations. D.C. Code 12-301(4); *see also Thompson v. Jasas Corp.*, 212 F. Supp. 2d 21, 26 (D. D.C. 2002) ("Under District of Columbia law, a one-year statute of limitations applies to libel and slander claims"). In applying this one-year statute of limitations, the District of Columbia follows the "single publication" rule, whereby publication of defamatory matter "'gives rise to but one cause of action for libel, which accrues at the time of the original publication.'" *Jin v. Ministry of State Sec.*, 254 F. Supp. 2d 61, 68 (D. D.C. 2003) (quoting *Ogden v. Ass'n of the United States Army*, 177 F. Supp. 498, 502 (D. D.C. 1959)). Here, there is no dispute that the alleged defamatory publication occurred in July of 2020 as alleged by Plaintiff in paragraph 19 of her Amended Complaint, and that Plaintiff did not

file suit until more than one year later – on December 2, 2021. Thus, Plaintiff's defamation claim is untimely and must be dismissed.

### F.   Plaintiff Fails to Plead Sufficient Facts to Support a Claim for Punitive Damages

Plaintiff seeks an award of punitive damages for the alleged violations of the FCRA[8], and in her CPPA and defamation counts. *See* Amended Complaint at ¶¶ 65, 84, and 107. In the District of Columbia, "[p]unitive damages are warranted only when the defendant commits a tortious act accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury." *Caulfield v. Stark*, 893 A.2d 970, 979-80 (D.C. 2006) (citations omitted). Thus, "[t]he availability of punitive damages depends on 'the intent with which the wrong was done, and not on the extent of the actual damages.'" *Doe v. De Amigos, LLC*, 987 F. Supp. 2d 12, 17 (D.D.C. 2013) (quoting *Dalo v. Kivitz*, 596 A.2d 35, 40 (D.C. 1991)).

Plaintiff fails to plead facts that show Industrial's alleged conduct was malicious or "accompanied by 'a state of mind evincing malice.'" *Id.* (quoting *Woodner v. Breeden*, 665 A.2d 929, 938 (D.C. 1995)). As stated *supra* at n. 7, Plaintiff also fails to plead facts that demonstrate that Industrial acted with "malice or willful intent to injure" that is required to avoid FCRA preemption of her defamation claim. *See* 15 U.S.C. § 1681h. While Plaintiff asserts that "[b]oth Defendants knew or recklessly disregarded the falsity of the information in the Industrial tradeline on the Equifax reports, both through their own records and through Plaintiff's numerous attempts to correct the record" (*See* Amended Complaint at ¶ 101), this allegation is not legally sufficient

---

[8] To the extent a federal standard for an award of punitive damages applies to the FCRA claim, for the purposes of this Motion, the standards are indistinguishable. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493 (2008*), State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003), *Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142 (4th Cir. 2008), and *Acosta v. The Islamic Republic of Iran*, 574 F. Supp. 2d 15, 30 (D. D.C. 2008), for a discussion of the federal law of punitive damages.

to support a claim for punitive damages. More importantly, the assertion is wholly belied by Plaintiff's other factual allegations. According to Plaintiff, Industrial responded to her within ten (10) days regarding her concerns with the report to the CRAs. *Id*. at ¶¶ 27-30. That response, a letter attached to Plaintiff's Amended Complaint as <u>Exhibit A</u>, demonstrates that Industrial reviewed Plaintiff's concerns, and instructed the three major CRAs – including Equifax – to delete any negative reporting, and submitted a correction request to the CRAs. *Id*. at ¶¶ 30-31. According to Plaintiff, those efforts were successful. Both TransUnion and Experian deleted the report promptly, and Equifax did so later. *Id*. at ¶¶ 31, 43. These allegations are not indicative of malice, but rather good faith attempts to address Plaintiff's concerns. Accordingly, by her own words, Plaintiff has failed to plead malice.

### G.    Plaintiff Fails to Plead Sufficient Facts to Support a Claim for Emotional Distress

Plaintiff seeks to recover for alleged "significant emotional distress" and from the inaccurate credit reporting, as well as from the unauthorized account reopening." She also claims to have experienced "humiliation, stress, anxiety, frustration, and depression, manifest in symptoms including, but not limited to loss of sleep, lack of appetite, headaches, and increase in blood pressure." Amended Complaint at ¶ 58 and ¶ 59. Although generally incorporated in each count, Plaintiff only specifically asserts a claim for emotional distress in her defamation count. *Id*. at ¶ 106.

Regardless of which legal theory Plaintiff pursues, she cannot meet her pleading burden for an award of emotional distress damages. As a threshold matter, a claim for emotional distress requires proof of "extreme and outrageous conduct on the part of the defendant." *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 163 (D.C. 2013). Such conduct has been described by District of Columbia courts as that which is "'so outrageous in character, and so extreme in degree, as to

go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Id.* (quoting *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998)). Thus, there is no liability for "'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Id.* Rather, to establish extreme and outrageous conduct, a plaintiff must show that "'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d)). Whether conduct rises to the level of extreme and outrageous depends on the context in which the conduct took place. *Id.* "It is for the trial court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery[,]" and Plaintiff fails to plead any facts that meet this standard. *Howard Univ. v. Best*, 484 A.2d 958, 985 (D.C. 1984) (citation omitted).[9]

To the extent Plaintiff's alleged distress flows from Industrial's alleged defamatory reporting, the claim is also time barred. On this point, courts have held that an emotional distress claim stemming from a claim for defamation is subject to the same one-year statute of limitation. *Foretich v. Glamour,* 741 F. Supp. 247, 251 (D. D.C. 1990) (one-year statute of limitation applies where emotional distress claim "arises out of" libel claim); *Thomas v. News World Communications,* 681 F. Supp. 55, 73 (D.D.C. 1988) (Plaintiffs' emotional distress claim is

---

[9] Under the facts of this case, there can be no claim for negligent infliction of emotional distress. Under the applicable District of Columbia law, a plaintiff can only recover damages under a claim for negligent infliction of emotional distress if she "was in the zone of physical danger and was caused by defendant's negligence to fear for [her] own safety . . ." *Cauman v. George Washington Univ.,* 630 A.2d 1104 (D.C. 1993) (quoting *Williams v. Baker,* 572 A.2d 1062, 1067 (D.C. 1990)). In other words, the plaintiff must be "physically endangered as a result of the defendant's alleged negligence" in order to recover. *Id.* at 1106. Here, Plaintiff has not alleged that the plaintiff was physically harmed, or that she was ever in any danger of being physically injured.

23

subject to one-year limitations period for libel where emotional distress claim was "completely dependent upon and 'intertwined' with their claims for libel").[10]

## V. CONCLUSION

Based on the forgoing points and authorities, Counts I, III, IV, V and VI of the Amended Complaint, and any and all claims asserted by the Plaintiff against Industrial, should be dismissed with prejudice.

Date: February 16, 2022                    Respectfully submitted,

  /s/ *David B. Applefeld*
David B. Applefeld, *pro hac vice*
Scott W. Foley, Bar No. 466848
SHAPIRO SHER GUINOT & SANDLER, P.A.
250 West Pratt Street, Suite 2000
Baltimore, Maryland 21201
Telephone: (410) 385-4234
Facsimile: (410) 539-7611
dba@shapirosher.com
swf@shapirosher.com

*Counsel for Defendant Industrial Bank*

---

[10] As discussed previously, Plaintiff cannot recover for her purported emotional distress based upon Industrial's alleged breach of contract. *See Pfeffer v. Ernst*, 82 A.2d 763, 764 (D. C. 1951*); and Howard Univ. v. Baten,* 632 A.2d 389, 392 (D.C. 1993*)*.

## **LOCAL CIVIL RULE 5.4 (f) CERTIFICATE**

I hereby certify that the foregoing submission does not contain any personal information as identified in Local Rule 5.4(f).

Date: February 16, 2022        /s/ *David B. Applefeld*

David B. Applefeld, *pro hac vice*
Scott W. Foley, Bar No. 466848
SHAPIRO SHER GUINOT & SANDLER, P.A.
250 West Pratt Street, Suite 2000
Baltimore, Maryland 21201
Telephone: (410) 385-4234
Facsimile: (410) 539-7611
dba@shapirosher.com
swf@shapirosher.com

*Counsel for Defendant Industrial Bank*

## **REQUEST FOR HEARING**

Defendant Industrial Bank of Washington, by its undersigned counsel, requests a hearing on its Motion to Dismiss.

Date: February 16, 2022        /s/ *David B. Applefeld*

David B. Applefeld, *pro hac vice*
Scott W. Foley, Bar No. 466848
SHAPIRO SHER GUINOT & SANDLER, P.A.
250 West Pratt Street, Suite 2000
Baltimore, Maryland 21201
Telephone: (410) 385-4234
Facsimile: (410) 539-7611
dba@shapirosher.com
swf@shapirosher.com

*Counsel for Defendant Industrial Bank*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 16th day of February, 2022, I electronically filed the foregoing document(s) with the Clerk of the Court using the CM/ECF system. The Court or the CM/ECF system will send notification of such filings to all CM/ECF participants. I further certify that a true and correct copy of this document was sent via U.S. first-class mail, postage paid, to all non-CM/ECF participants.

Date: February 16, 2022

   /s/ *David B. Applefeld*
David B. Applefeld, *pro hac vice*
Scott W. Foley, Bar No. 466848
SHAPIRO SHER GUINOT & SANDLER, P.A.
250 West Pratt Street, Suite 2000
Baltimore, Maryland 21201
Telephone: (410) 385-4234
Facsimile: (410) 539-7611
dba@shapirosher.com
swf@shapirosher.com

*Counsel for Defendant Industrial Bank*